**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KPot Inc. | | |
| vs. | | Civil Action |
| 88 K-Pot Korean BBQ & Hot Pot LLC d/b/a 88 K-Pot Limited Liability Company | | No. 23-316 |

**MOTION FOR PRELIMINARY INJUNCTION**

Under 15 U.S.C. § 1116, Plaintiff KPot Inc. seeks a preliminary injunction enjoining Defendant 88 K-Pot Korean BBQ & Hot Pot LLC from infringing on its registered mark "KPOT" during this litigation. We incorporate by reference the attached Memorandum of Law.

Respectfully submitted,

_____*/s/ Donald Benedetto*_____
Donald Benedetto (PA ID No. 309199)
Daniel Auerbach (PA ID No. 316856)
Gamburg & Benedetto LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
don@gamburglaw.com
dan@gamburglaw.com

*Counsel for Plaintiff*

Dated: January 30, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KPot Inc. | |
| vs. | Civil Action |
| 88 K-Pot Korean BBQ & Hot Pot LLC d/b/a 88 K-Pot Limited Liability Company | No. 23-316 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

Plaintiff operates a successful chain of Korean restaurants with dozens of locations. Plaintiff obtained a registered servicemark for the word "KPOT" to market restaurants. Recently, Defendant created its own restaurant under the name "88 K-Pot." Despite written demand, Defendant refuses to stop using "K-Pot" to market its restaurant. Plaintiff seeks a preliminary injunction prohibiting Defendant from using "K-Pot" or other phrases containing "k" near "pot" to market its restaurant during the pendency of this litigation.[1]

---

[1] Before filing this motion, we spoke with attorney Fong Joe Hou on January 27, 2023. Mr. Hou represented Defendant in pre-suit discussions about this dispute, as Exhibit H to this motion shows. Mr. Hou indicated that he was not counsel for Defendant in this suit. He further indicated that he could not provide contact information or the name of a contact at Defendant that we could contact regarding this motion. An email confirming the conversation is attached as Exhibit I.

We do not have any contact information for Defendant and so are unable to speak with anyone about our motion. Accordingly, we believe that we have complied with this Court's Initial Procedural Order's requirements regarding pre-motion conferences because we are unable to conduct any further pre-motion discussions with Defendant.

## STATEMENT OF FACTS

KPot incorporated in June 2017. KPot operates a chain of Korean restaurants, with dozens of locations throughout the United States. KPot's business is particularly concentrated along the eastern seaboard, with a number of locations in Pennsylvania, New York, and New Jersey.

KPot's website is thekpot.com. The top, and substantial majority of, Google results for the phrase "kpot" refer to KPot or specific KPot locations. *See* (Exh. A: Google results printout).

In 2018, KPot secured a trademark protecting the use of the word "KPOT" to market restaurants (the "***Mark***"). *See* (Exh. B: Registration). The Mark is registered with the "principal register" within the meaning of Title 15, Chapter 22, Subchapter I of the United States Code. Under 15 U.S.C. § 1115(a): "The registration is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein."

KPot displays its logo in a stylized manner:



KPot sought additional trademarks protecting its stylized logos. *See* (Exhs C, D, E). The applications remain pending.

Infringer organized in October 2022. See (Exh. F: Department of State printout). Infringer will soon open a single restaurant in Bethlehem, Pennsylvania at 3926 Nazareth Pike. Infringer serves food of the same cuisine as KPot's.

Infringer uses the phrases "88 K-Pot" to market its restaurant—not only on signage, menus, and its website but also on billboards. Infringer's website is 88kpot.com.

Not only did Infringer copy KPot's protected servicemark, but Infringer also styles its logo to resemble KPot's logo:



On September 15, 2022—soon after discovering the infringement—KPot's in-house legal counsel wrote to Infringer. The letter demanded that Infringer stop using the Mark to market Infringer's services. *See* (Exh. G).

Later, Infringer's counsel wrote back, expressing Infringer's refusal to comply with the cease-and-desist letter. The letter claimed that "KPOT" was similar to the phrase "K-pop," which is a term used to describe Korean pop music. For reasons that the letter does not make clear, that supposedly entitled to Infringer to continue using KPot's registered servicemark "KPOT." See (Exh. H: response letter).

In this Court, KPot sued infringer, seeking money damages and permanent injunctive relief. KPot served Infringer on January 26, 2023 by personal service. *See* (Doc. 5). KPot now seeks a preliminary injunction to enjoin Infringer's infringement of the Mark during the pendency of this litigation.

## STATEMENT OF THE QUESTION INVOLVED

Should this Court preliminarily enjoin Infringer from using the Mark or other phrases containing "k" near "pot" during this litigation? *Suggested answer:* Yes.

## STANDARD OF REVIEW

15 U.S.C. § 1116 empowers this Court to grant injunctions "to prevent the violation of any right of the registrant of a [registered] mark." Preliminary injunctions are available under § 1116. *See, e.g.*, *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 203–04 (3d Cir. 2014) (considering § 1116 in reviewing the grant of a preliminary injunction in a Lanham Act case).

"A preliminary injunction is an extraordinary remedy never awarded as of right." Awarding preliminary relief, therefore, is only appropriate upon a clear showing that the plaintiff is entitled to such relief. A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* (internal citations and quotation marks omitted).

While the Third Circuit concluded that there should be no presumption of irreparable injury in the trademark context in *Groupe SEB*, *id.*, Congress changed that result in a portion of the Consolidated Appropriations Act of 2021 known as the Trademark Modernization Act (the "**TMA**"). Now: "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits

for a violation identified in this subsection in the case of a motion for a preliminary injunction." 15 U.S.C. § 1116(a).

The Third Circuit recently adopted an analytic framework governing review of injunction requests following Congress's adoption of the TMA:

> The TMA's rebuttable presumption requires courts considering a trademark injunction to assess the plaintiff's evidence only as it relates to a likelihood of success on the merits. Consulting the *Lapp* factors to analyze likelihood of confusion, but only to determine whether the infringement claim is likely to succeed. Anything more, including commenting on whether the proffered evidence of consumer confusion could show irreparable harm, veers impermissibly into the burden of persuasion controlled by Rule [of Evidence] 301. If a court finds no likelihood of success on the merits, the inquiry ends and the injunction will be denied.
>
> If the plaintiff's evidence does establish likely trademark infringement, the TMA is triggered, and the burden of production shifts to the defendant to introduce evidence sufficient for a reasonable factfinder to conclude that the consumer confusion is unlikely to cause irreparable harm. But note again the sequence. So far, the court has not assessed any of the evidence for likely irreparable harm. Rather, the TMA's presumption means the court assumes irreparable harm, even if the plaintiff has proffered nothing in support. The focus trains on the defendant's evidence, and whether it is sufficient to rebut the TMA's presumption. A meaningful consideration of the facts, not a box-checking review of the *Lapp* factors, is key, aimed at determining whether the defendant's offering allows a reasonable conclusion that the consumer confusion shown by the plaintiff will not cause irreparable harm.
>
> Step 3. If a defendant successfully rebuts the TMA's presumption by making this slight evidentiary showing, the presumption has no further effect. It has done its work and simply disappears like a bursting bubble. So the burden of

production returns to the plaintiff to point to evidence that irreparable harm is likely absent an injunction.

*Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 185–86 (3d Cir. 2022)

(internal citations and footnotes omitted).

## SUMMARY OF ARGUMENT

Infringer's use of a phrase containing KPot's mark "KPOT" indisputably violates the Lanham Act. Enjoining it would protect the public interest in obtaining accurate information about services and would impose no harm on Infringer. Following Congress's adoption of the TMA, the only question conceivably in dispute—irreparable injury—is presumptively established in KPot's favor. Even if Infringer somehow presented enough evidence to get past the presumption, the harm to KPot's reputation and the financial loss it would suffer are irreparable.

Simply put, Infringer's conduct is exactly what the Lanham Act exists to prohibit. This Court should enforce its provisions by enjoining Infringer's use of "KPOT" during this litigation.

## ARGUMENT

KPot's request satisfies all requirements for the issuance of a preliminary injunction. We address them in turn.

### I.   KPot is likely to succeed on the merits.

A "likelihood of success on the merits" is a "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d

223, 229 (3d Cir. 2011). A "likelihood" does not require that it be "more likely than not" that the plaintiff prevail. *Id.*

Here, KPot brings claims under 15 U.S.C. §§ 1114, 1125(a). Claims under these sections have identical elements. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir. 1999)). "[A] plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *Id.* (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)).

KPot has a strong case in this straight-forward trademark-infringement case involving competing services. But we need not show that at this stage. At the very least, KPot has a "reasonable chance" of winning. We address the elements in turn.

### A.    KPot has a valid and legally protectable mark.

The Mark is registered. "The registration is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein." 15 U.S.C. § 1115(a). We cannot conceive of what evidence Infringer would use to assault the Mark's validity. And there is none.

**B.      Second, KPot owns the mark.**

The registration indicates that it is registered to KPot, creating a presumption that it owns it. In fact, KPot has not sold or otherwise transferred the Mark.

**C.      Infringer's use of the mark to identify goods or services causes a likelihood of confusion.**

The Third Circuit uses a two-track analysis to determine the likelihood of confusion. The threshold question is whether the dispute involves parties that sell "competing goods" or services. In cases involving competitors in the same market, "courts need rarely look beyond the mark itself" to determine whether there is a likelihood of confusion. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 212 (3d Cir. 2000)) (internal quotation marks omitted). In other cases, more extensive analysis of the so-called "*Lapp* factors" is necessary. *Id.*

Here, KPot and Infringer are competing "hot pot" restaurants. They are in the same market. The central question is therefore the similarity of the marks.

Here, KPot and Infringer use essentially identical marks. KPot's registered mark is "KPOT." Infringer uses "88 K-POT." And Infringer deliberately styled its logos to resemble Kpot's. There is little doubt that consumers would believe that a "hot pot" restaurant that markets itself with a brand that contains "KPOT" is a KPot location. That establishes a likelihood of confusion.

While this Court should focus on the similarity of the marks, the *Lapp* factors also support our conclusion that Infringer's actions are likely to confuse consumers. They are:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity of function;

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

A *& H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 211 (3d Cir. 2000) (citing *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir.1983)). All of these factors counsel in favor of granting KPot an injunction.

*Similarity of the marks.* Infringer uses a phrase that contains the Mark to market Infringer's restaurant. While the marks are not literally identical, Infringer uses the entirety of the Mark. There is substantial similarity, confirmed by Infringer's efforts to make its use of the Mark visually resemble KPot's.

*Strength of KPot's mark.* The Mark has a strong association with the style of cuisine that KPot sells. KPot dominates the Google search results for "kpot." KPot developed and popularized the Mark.

*Price of KPOT's services.* KPot sells restaurant meals. Its food is of good quality but also reflects strong value for money. Consumers are unlikely to do extensive research about the origins and authenticity of a mark before purchasing reasonably priced restaurant meals. There is therefore a greater risk of confusion.

*Length of defendant's use of the mark.* We do not know exactly when Infringer began using a phrase containing "KPOT" to market its restaurant. However, we became aware of that infringement only around September 2022. Infringer would not incorporate until October 2022. In contrast, KPot has used the mark since 2017.

*Defendant's intent.* Even basic internet searches for the phrase "KPOT" would reveal KPot's extensive use of that phrase to market its business and the strong association between the Mark and KPot's business. Infringer either took no efforts whatsoever to ensure that it could use the phrase KPot and so was at least recklessly indifferent to the risk of infringement or infringed intentionally. Further, Infringer's efforts to stylize its logos similarly to KPot's strongly suggest a specific intent to confuse consumers.

*Actual confusion.* We believe that consumers are actually confused about whether Infringer's restaurant is a true KPot location. However, we recognize that, because Infringer's restaurant is not yet open, it is more difficult to assess actual confusion.

*Marketing channels.* Both KPot and Infringer use the internet and social media to market their restaurants. Infringer's domain name is 88kpot.com, which suggests a similar desire to confuse consumers who use the shared marketing channels of both KPot and Infringer. Similarly, Infringer uses a logo much like KPot's in its social-media postings.

*Sales efforts.* The targets of the parties' internet sales efforts are the same— people who would search for "hot pot" cuisine of both KPot and Infringer.

*Similarity of the services*. KPot and Infringer both provide "hot pot" cuisine. They are not only restaurants but also restaurants in the same specific genre.

*Infringer's efforts to directly compete with KPot*. While KPot does not have a restaurant in the same town as Infringer's, KPot has a number of locations in Pennsylvania, New York, and New Jersey. Infringer's location will be in direct competition with KPot as consumers may believe that Infringer's restaurant is a KPot location.

In sum, while this Court need not consider the *Lapp* factors at length because KPot and Infringer sell competing services, those factors also show a likelihood of consumer confusion.

## II.   KPot will suffer irreparable harm absent a preliminary injunction.

The TMA entitles KPot to a presumption of irreparable injury without any evidence. *Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 186 (3d Cir. 2022). To rebut that presumption, Infringer would have to adduce evidence that

"allows a reasonable conclusion that the consumer confusion shown by the plaintiff will not cause irreparable harm." *Id.*

We do not believe that Infringer could meet that burden; even if it did, our evidence would outweigh Infringer's because of the clear irreparable harm that relates from the effective counterfeiting of KPot's mark. Infringer will directly compete with KPot in the market for the cuisine that KPot sells. KPot is a strong mark in the market for "hot pot" cuisine. A consumer would have every reason to believe that "88 K-Pot" is a real KPot location. Yet, when the consumer went to the location, he would not receive the uniform and quality food, service, and experience for which KPot locations are known. As we have detailed above, KPot has established clear likelihood of customer confusion.

These injuries are irreparable for several reasons. First, the Third Circuit "has held that once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 805 (3d Cir. 1998) ( citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196–97 (3d Cir. 1990)). Because we have established a likelihood of consumer confusion, the irreparable-harm prong is also satisfied.

While this Court need consider nothing else, our harm is also irreparable for a second reason: the difficulty of calculating and collection an award of money damages. While financial harm is not typically irreparable, it is here. In considering whether financial harm is irreparable, at least in breach-of-contract cases, the Third Circuit has considered: "(a) the difficulty of proving damages with

reasonable certainty, (b) the difficulty of procuring a suitable substitute performance by means of money awarded as damages, and (c) the likelihood that an award of damages could not be collected." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) (citing Restatement (Second) of Contracts § 360 (1981)). As the second factor regarding substitute performance is irrelevant because this action is not in breach of contract, we consider only the first and third factors.

As to the difficulty of proving damages, it will be difficult to calculate how many people will be diverted from legitimate KPot locations to Infringer's locations during the pendency of this litigation. Infringer is not yet open for business. And, even if it were, it is unclear precisely what methods we could use to determine how many of Infringer's customers would believe that they were going to a legitimate KPot location and whether they would have gone to a KPot location but for Infringer's infringement.

As to collection risks, Infringer is not yet open. There is substantial risk that it has no meaningful assets on which we could execute a judgment. There is substantial risk that we could not collect any judgment for money damages.

Third, injury to goodwill or loss of control over reputation can be irreparable. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 711 (3d Cir. 2004) (citing *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1118 (7th Cir.1997). Here, Infringer's use of almost identical mark to KPot's will lead customers to associate Infringer's business with KPot's. KPot will be unable to control or address the reputational damage form Infringer's confusion of

consumers. Given the quality of KPot's offerings, any substandard experience that consumers may have at Infringer's restaurant would irreparably harm KPot.

### III.     The balance of equities favors KPot.

We can conceive of no valid equitable interest that Infringer has in continuing to confuse consumers by using KPot's registered mark. Infringer can continue to sell the same cuisine that it sells and operate its business. But there is no reason that it should be permitted to continue violating the Lanham Act during this litigation.

### IV.     A preliminary injunction is in the public interest.

The trademark system has a purpose: so that consumers know that they are getting the goods and services that they believe that they are getting. "[T]here is a strong public interest in the prevention of misleading advertisements." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 597 (3d Cir. 2002). Here, Infringer's use of the word "KPot" to market its business misleadingly induces consumers to believe that Infringer's restaurant is a KPot location. The public, who have welcomingly received KPot's innovative cuisine, have a strong association between the KPot brand and the experience that it provides. The public interest counsels in favor of prohibiting Infringer from continuing to confuse consumers during the pendency of this litigation.

**CONCLUSION**

KPot requests an injunction prohibiting Infringer from marketing a restaurant using "KPot," or "K-Pot," or any other phrase containing both the letter "K" and the word "pot" however capitalized; and to no longer use any domain name including any similar phrase.

Respectfully submitted,

_____/s/ Donald Benedetto_____
Donald Benedetto (PA ID No. 309199)
Daniel Auerbach (PA ID No. 316856)
Gamburg & Benedetto LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
don@gamburglaw.com
dan@gamburglaw.com

*Counsel for Plaintiff*

Dated: January 30, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KPot Inc. | |
| vs. | Civil Action |
| 88 K-Pot Korean BBQ & Hot Pot LLC d/b/a 88 K-Pot Limited Liability Company | No. 23-316 |

**[PROPOSED] ORDER**

AND NOW, on this _____ day of _____, 2023, it is hereby ORDERED that:

Plaintiff KPot Inc.'s Motion for Preliminary Injunction is GRANTED.

Defendant 88 K-Pot Korean BBQ & Hot Pot LLC may not market its services using the term "kpot," "k-pot," or any similar phrase containing both "k" and "pot" regardless of punctuation and capitalization during this litigation.

Defendant 88 K-Pot Korean BBQ & Hot Pot LLC shall immediately cease using the domain "88kpot.com" and may not use a url containing the term "kpot," "k-pot," or any similar phrase containing both "k" and "pot" regardless of punctuation and capitalization during this litigation.

**BY THE COURT:**

_____
Leeson, J.

**PROOF OF SERVICE**

I certify that, on the date below, I mailed this paper to the last known address

as follows, which service satisfies Fed. R. Civ. P. 5(b)(C):


88 K-Pot Korean BBQ & Hot Pot
3926 Nazareth Pike, Suite 12-14
Bethlehem, PA 18020


*/s/ Daniel J. Auerbach*
Donald Benedetto (PA ID No. 309199)
Daniel Auerbach (PA ID No. 316856)
Gamburg & Benedetto LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
don@gamburglaw.com
dan@gamburglaw.com

*Counsel for Plaintiff*

Dated: January 30, 2023