IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KPot Inc. | |
| vs. | Civil Action |
| 88 K-Pot Korean BBQ & Hot Pot LLC d/b/a 88 K-Pot Limited Liability Company | No. 23-316 |

**REPLY BRIEF IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION**

Defendant 88 K-Pot Korean BBQ & Hot Pot LLC ("Infringer") gives this Court no reason to permit it to rip off Plaintiff KPot Inc.'s ("Registrant") registered mark "KPOT" during this litigation. Instead, this Court should stop the infringement now before Infringer opens for business and begins deceiving the public in earnest. Infringer intends to operate a restaurant selling the exact type of cuisine as Registrant using the entirety of Registrant's mark as part of its brand. To deny Registrant relief would render its registered mark meaningless.

**I. The marks are similar.**

Infringer's claim that "88KPot" is not similar to "KPot" is absurd. And Infringer's own citations reject its position. We don't think that Infringer is really arguing in its first section that there is no similarity. Instead, it appears to challenge the mark "KPOT" as merely descriptive of a type of cuisine and so a weak mark entitled to little protection. We address that argument in the next section on that exact issue. But there should be no serious dispute that "KPot" is similar to "88KPot" even if Infringer seeks to confuse the conceptually distinct questions of similarity of the marks and the strength of the registered mark. *See also* (Exh. A: Office Action denying registration of the mark "K-

POT PLACE" as similar to "KPOT").

Perhaps reflecting Infringer's confusion of the issues, none of the cases it cites on similarity actually support its position. Both find that marks *were* similar.

For instance, in *Nabisco Brands, Inc. v. Quaker Oats Co.*, 547 F. Supp. 692 (D.N.J. 1982), the marks at issue were for "CREAM OF WHEAT" and "CREAMY WHEAT." The district court found similarity between the marks as was necessary to support a Lanham Act claim even though the term "cream" was merely descriptive. That's all that matters for this section.

Similar is Infringer's citation to the USPTO's administrative decision *In re Jack B. Binion*. There, the examiner found that registered marks "BINION'S ROADHOUSE," "JACK BINION," and "JACK BINION'S" were similar to the applicant's mark "BINION'S" and so rejected the application for "BINION'S." The administrative hearing panel agreed, affirming the rejection of the application: "The dominant portion of registrant's mark, BINION'S, is identical to the entirety of applicant's mark BINION'S." After so concluding, the panel ultimately found that the examiner properly refused to register the mark "BINION'S."

Infringer apparently cites *In re Jack B. Binion* for its analysis that the "BINION'S" was the "dominant portion" of the mark "BINION'S ROADHOUSE" and not "ROADHOUSE." The decision explains that "roadhouse" is a generic or descriptive term for a restaurant. And the registrant had disclaimed the word "roadhouse," meaning that it did not have a trademark for the word "ROADHOUSE" by itself but rather only together with "Binion's" to form "BINION'S ROADHOUSE." As a result, "BINION'S" was the "dominant portion" to consider in the similarity analysis.

Infringer incorrectly seeks to analogize this case by treating "KPot" as a generic term like "Roadhouse" for a restaurant. But that simply isn't so, as we detail in the next section.

Moreover, the *entirety* of Registrant's mark is "KPOT." It would be unreasonable to disregard the *entirety* of the mark in deciding whether it was similar to another mark. If Registrant doesn't have protection for "KPOT," it doesn't have anything.

## II. "KPOT" is worthy of protection as a "fanciful" or "suggestive" term for hot-pot cuisine and so a strong mark.

In considering the strength of a mark, courts have to determine its nature. As the Third Circuit has explained: "[T]o determine whether a mark is protectable as a trademark, marks are divided into four classifications: (1) generic (such as 'DIET CHOCOLATE FUDGE SODA'); (2) descriptive (such as 'SECURITY CENTER'); (3) suggestive (such as 'COPPERTONE'); and (4) arbitrary or fanciful (such as 'KODAK'). Arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product; they bear no logical or suggestive relation to the actual characteristics of the goods. Suggestive marks require consumer 'imagination, thought, or perception' to determine what the product is. Descriptive terms 'forthwith convey an immediate idea of the ingredients, qualities or characteristics of the goods. Generic marks are those that 'function as the common descriptive name of a product class. In order to qualify for Lanham Act protection, a mark must either be suggestive, arbitrary, or fanciful, or must be descriptive with a demonstration of secondary meaning. Generic marks receive no protection; indeed, they are not trademarks at all." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 221–22 (3d Cir. 2000) (cleaned up).

Here, "KPOT" is at minimum a "suggestive" mark for hot-pot restaurant services if

not an "arbitrary or fanciful" mark and so is entitled to protection. "KPot" is not a generic name for a type of cuisine. A generic term for the cuisine of both Registrant and Infringer already exists: "hot pot." Registrant did not try to trademark "hot pot." Instead, it developed the mark "KPot" for its Korean hot-pot cuisine through years of effort and the opening of a number of locations throughout the United States. The mark is suggestive in that a person would not immediately know that "KPot" is a Korean hot-pot cuisine restaurant but would instead have to employ "imagination, thought, or perception" to understand what the business is.

Infringer's own affidavit implicitly recognizes that "KPot" is not a generic term but rather suggests that it is arbitrary or fanciful. In Exhibit H, filed separately from its main brief, Infringer's principal claims that he picked the term for his own restaurant because of its similarly to the term used to describe Korean pop music: "K-POP." The use of a term similar to a musical term to describe food is not generic or descriptive of food. It is not even "suggestive." Instead, it "bear[s] no logical or suggestive relation to the actual characteristics of the goods." But even just that the mark is "suggestive" is enough to reject Infringer's arguments.[1]

Infringer offers no evidence that "KPot" is instead some widely used term for hot-pot separate from Registrant's use of that mark. Instead, it is able to cite only one example of someone else using the term "KPOT" besides itself and Registrant: "K-Pot Place" in Gardena, CA. But K-Pot defended its mark with respect to the Gardena, CA

---

[1] Technically, we need not even show that the mark itself is "suggestive." A generic term with secondary meaning is enough. We do not waive that argument but instead preserve it should it be appropriate at any hearing on this motion. However, our primary argument is based on the text of the mark itself, which is necessarily a protectible mark as at least "suggestive."

business by successfully opposing its trademark application. *See* (Exh. A). While KPot is considering whether to take the next step of suing the California business infringing on its mark, it has not yet done so because it does not operate in California.

Indeed, the USPTO examiner relied on similar reasoning to what we suggest here in rejecting an application to register "K-Pot Place." The examiner noted: "The marks are similar in commercial impression because the dominant element in each mark is nearly identical, namely, 'K POT.' " (*Id.*).

Much of Infringer's argument misses the fundamental point. Infringer tries to show that other people besides Registrant use the word "pot" in marketing restaurants. That is both true and unsurprising: food is often cooked or served in pots. Describing a restaurant with some phares containing the word "pot" makes sense. But Registrant protected **K**Pot specifically. To us, Infringer is free to use 88hotpot, 88CPot, or whatever other phrase containing the word "pot" that it would like. It just can't steal our registered mark "KPot."

### III. The lack of prices on Registrant's website is irrelevant.

Infringer offers a strained argument on a *Lapp* factor of little significance: whether "the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase" suggests that customers would likely take the time to figure out that "KPot" and "88KPot" are different businesses. Infringer claims that, because Registrant posts no prices on its website, it has sophisticated restaurant customers seeking not just a good meal at a good price but a "dining experience."

While KPot agrees that it provides a high-quality dining experience, the absence of prices on its website does not somehow suggest that its registered mark does not merit

protection. KPot does not post its prices because individual KPot locations are under separate ownership and each owner has the right to set his own prices—within reason. While KPot provides a high-quality service, it is also focused on providing its customers with value for money. A night out at a KPot location is affordable—not a profoundly expensive experience requiring substantial research before having a meal.

### IV. Infringer's arguments on the likelihood of confusion miss the mark both legally and factually.

As Infringer recognizes, the Trademark Modernization Act places a burden on Infringer to demonstrate that "consumer confusion is unlikely to cause irreparable harm." Infringer tries to flip the burden the other way, claiming that Registrant is obligated to provide "evidence of actual confusion." But that is contrary to the TMA.

Moreover, we have provided evidence that Infringer is using the term "KPOT" to market its soon-to-open restaurant on billboards and on social media. Any consumer who sees multiple restaurants using the term "KPot" will necessarily believe them to have common ownership. Registrant should not have to wait for the restaurant to actually open and interview Infringer's customers before it can file suit. Infringer's actions are necessarily confusing because Registrant and Infringer are in the exact same market for hot-pot restaurant services. That is why the Third Circuit instructs to focus on the marks themselves and not the entirety of the *Lapp* factors when considering businesses in the same market, as we explained in our opening brief.

There is no freedom to infringe on others' intellectual property and hope that it is simply hard to demonstrate some actual confusion. Infringer simply cannot enter Registrant's business, compete with Registrant, and steal its intellectual property with no consequence.

### V. Infringer's claims about geography are factually and legally incorrect.

Infringer claims, with no evidence, that Registrant has no plans to operate near Registrant's location. That simply isn't true. Registrant is trying to build a nationwide restaurant chain. It has looked at locations in Allentown to build a KPot location, merely minutes away from Registrant's business. When COVID broke out, Registrant was building a restaurant in King of Prussia, although did not finish given the pandemic. If KPot comes across an appropriate opportunity to expand, it will do so.

But that's not necessary to grant us an injunction. KPot has existing locations within driving distance of Bethlehem. Those same consumers will be exposed to Infringer's use of Registrant's mark through internet searches, at the very least, if not by observing Infringer's highway billboards. Infringer has not somehow confined its marketing to just locals in Bethlehem but seeks, as does every restaurant, to bring customers into the door.

The only Third Circuit decision applying the supposed *Dawn* doctrine on which Infringer relies does not demand more. Instead, it *explicitly* says that just driving up the Turnpike is not enough to make something a different market in which a registrant can't get an injunction.

*Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614 (3d Cir. 1969) considered the use of the phrase "Holiday Inn" to describe a Virgin Islands hotel independent from the famous chain. Ultimately, the Third Circuit reversed the grant of an injunction because of the "unusual geographic setting of the Virgin Islands." The Third Circuit reasoned that a boat or a plane was necessary to travel "over a thousand miles east" of the mainland. That was different than a market that could be reached "*by turnpike.*"

Accordingly, the Third Circuit found no risk of actual confusion of customers given the separateness of the Virgin Islands from the mainland.

Here, in contrast, one would reach Infringer's location from Philadelphia *literally* by taking the Northeast Extension of the Turnpike. Even under 1969's standards, when the Third Circuit decided *Holidays Inns*, Bethlehem is not somehow a market entirely distinct from Philadelphia.

And things have changed since 1969. Restaurants, including both Registrant and Infringer, use the internet to market their services. The internet goes everywhere. While Infringer claims no geographical overlap of marketing efforts, that cannot be so given the internet and Infringer's use of it. Infringer does not claim that it has even tried to limit its marketing to Bethlehem, nor has it done so.

### VI. Infringer misunderstands the ninth *Lapp* factor.

The ninth factor is "the relationship of the goods in the minds of consumers because of the similarity of function." Supposedly analyzing this question, Infringer explains that it includes the number "88" next to "KPot" in its *mark* and so the *marks* are different. But the ninth *Lapp* factor doesn't ask about the similarity of the marks. That's instead the first *Lapp* factor and one that counsels strongly in our favor—as the USPTO itself found in related litigation over the mark "K-Pot Place."

Instead, the ninth *Lapp* factor is about the similarity of the *goods* (or, here, services). Both Registrant and Infringer sell hot-pot-cuisine restaurant services. Both Infringer and Registrant are in the same business. That's all that matters for the ninth *Lapp* factor.

## VII. Infringer has no meaningful argument on irreparable harm.

Infringer fails to understand the governing law. As we have detailed, the TMA creates a presumption of irreparable harm. While Infringer argues that *we* failed to establish irreparable harm, we need not do so. Moreover, most of Infringer's arguments are simply a retread of those we have addressed already

Infringer also gets other aspects of the law wrong. It asserts based on a district judge's decision that financial injury isn't an irreparable harm. But as we already detailed in our opening, the Third Circuit disagrees under some circumstances applicable here where damages would be difficult to determine. And the Third Circuit finds the reputational injury from mark infringement is also irreparable.

## VIII. Infringer will suffer no meaningful harm if this Court grants an injunction.

Infringer inappositely complains that it has invested $700,000 in its restaurant and so would suffer injury if this Court entered the injunction that we requested. But we don't seek to enjoin Infringer from opening a restaurant selling whatever cuisine it wants. It just can't use the phrase "KPot" in its name. Infringer's business is not even open yet. It can easily come up with another appropriate name and get the full benefit of its investment.

Any supposed harm that Infringer would suffer is not harm in the first place. Any such harm would be limited to the costs of changing the name. But those costs are exactly the consequence of Infringer's wrongful actions. Despite copying the phrase "KPot" and aping Registrant's typographical style, Infringer still claims to this Court that it had no idea that the "KPot" mark existed. That claim is incredible. Even were it not, the most basic of Google searches would immediately reveal Registrant's existence

in seconds. If Infringer was unaware of Registrant's use of "KPOT," that was possible only through reckless blindness.

Infringer should not be rewarded for its misdeeds, even if this Court really believes that Infringer simply buried its head in the sand and had no idea about the competing mark. Nor is there any call for $700,000 bond when Infringer will get full benefit of those expenditures regardless of what name it decides to use.

Infringer also complains for no real reason that we supposedly waited too long to file this action. But we were delaying given the hopes of working out a resolution with Infringer. We had no pressing timetable at that point because Infringer was not yet open for business. Now, our understanding is that it intends to open for business soon. Particularly given the TMA's presumption of irreparable harm, our delay to try to work things out is no reason to deny us an injunction.

## CONCLUSION

Registrant requests an injunction prohibiting Infringer from infringing on Registrant's "KPOT" mark.

Respectfully submitted,

*/s/ Donald Benedetto*
Donald Benedetto (PA ID No. 309199)
Daniel Auerbach (PA ID No. 316856)
Gamburg & Benedetto LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
(215) 567-1486

*Counsel for Plaintiff*

Dated: March 24, 2023

**PROOF OF SERVICE**

I certify that, on the date below, I filed this paper electronically and it is available for viewing and downloading from the ECF system. Service is complete on Defendant 88 K-Pot Korean BBQ & Hot Pot LLC because the following is a Filing User:

Chanda A. Miller, Esq.
Barnes & Thornburg LLP
1717 Arch Street, Suite 4900
Philadelphia, PA 19103

*Counsel for Defendant*

    */s/ Daniel J. Auerbach*
Donald Benedetto (PA ID No. 309199)
Daniel Auerbach (PA ID No. 316856)
Gamburg & Benedetto LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
don@gamburglaw.com
dan@gamburglaw.com

*Counsel for Plaintiff*

Dated: March 24, 2023